**Robert H. MOORE, Plaintiff,**

v.

**John L. MOORE, as Judge of Probate of Mobile County, Alabama, Agnes Baggett, as Secretary of State of the State of Alabama, Roy Mayhall, as Chairman of the Democratic Executive Committee, and Richmond Flowers, as Attorney General of the State of Alabama, Defendants.**

**David Vann, Intervenor,**

**Walter F. Eigenbrod, Intervenor.**

**Civ. A. No. 3228–64.**

United States District Court
S. D. Alabama, S. D.
March 13, 1964.

John W. McConnell, Jr., Armbrecht, Jackson, McConnell & DeMouy, Mobile, Ala., for plaintiff.

Gordon Madison, Asst. Atty. Gen. of Alabama, Montgomery, Ala., for defendants Moore, Baggett and Flowers.

Roy Mayhall, pro se.

Before GEWIN, Circuit Judge, and THOMAS and JOHNSON, District Judges.

PER CURIAM.

The plaintiff, Robert H. Moore, a resident citizen and a registered qualified elector of Mobile County, Alabama, and a member of the Democratic Party, filed his amended complaint seeking a declaratory judgment and injunctive relief (at the hearing, by agreement of all parties, the case was submitted to the Court on the merits) against John L. Moore, as Probate Judge of Mobile County; Agnes Baggett, as Secretary of State; Roy Mayhall, as Chairman of the State Democratic Executive Committee; and Richmond Flowers, as Attorney General of the State of Alabama. The plaintiff relies on 42 U.S.C.A. §§ 1983

and 1988. There are two intervenors. David Vann, a resident citizen and qualified elector of Jefferson County, Alabama, and a duly qualified candidate for Congress from the 9th Congressional District (Jefferson County), contends that no relief should be granted at this time. The other intervenor, Walter F. Eigenbrod, is a resident citizen of Madison County, Alabama, of the 8th Congressional District and is a registered and qualified elector, and aligns himself with the plaintiff, but seeks additional relief in that he requests the court to divide the State of Alabama into eight Congressional Districts with as much mathematical precision as possible, giving proper consideration to the principle of equal representation for equal numbers of people. Under attack is a legislative act of the State of Alabama, "Act 154" (Senate Bill 224) approved September 15, 1961, and it is commonly known and referred to as the "9-8 Bill," Title 17, Secs. 426(1)–462(5), Code of Alabama 1940.

The act in question regulates the nomination of candidates for the House of Representatives of Congress. Due to population changes, the number of representatives from the State of Alabama in the House of Representatives of the United States Congress was reduced from 9 to 8 in January 1963. The State has not been redistricted into eight districts. Congressmen are elected from the state at large, subject, however, to the provisions of the legislative act mentioned. The legislation under attack has been passed upon three separate times—twice by the Supreme Court of Alabama, and once by a three judge panel of this court. Jansen v. Alabama, ex rel. Downing (Jan. 18, 1962), 273 Ala. 166, 137 So.2d 47; Alsup v. Mayhall (Aug. 22, 1962), U.S.D.C.S.D.Ala., 208 F.Supp. 713; White v. Frink (Oct. 1, 1962), 274 Ala. 49,[1] 145 So.2d 435. The act was held valid by all three decisions, but such decisions were rendered prior to the decisions of the U. S. Supreme Court in Wesberry v. Sanders (Feb. 17, 1964) 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, and Martin et al. v. Bush et al., (Oct. 19, 1963) U.S.D.C.S.D. Tex., 224 F.Supp. 499, aff'd. by Sup.Ct. Martin, et al. v. Bush et al., (Mar. 2, 1964), 376 U.S. 222, 84 S.Ct. 709, 11 L. Ed.2d 656. Accordingly, it is our duty to re-examine the act in question, the two decisions of the Alabama Supreme Court, and the decision of this court in light of the two recent U. S. Supreme Court decisions.

Pursuant to the decisions in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Wesberry v. Sanders, supra; Martin v. Bush, supra; and other cases, we have no difficulty in concluding, (1) that this court has jurisdiction of the subject matter; (2) that the parties here involved have standing to sue; and (3) that a justiciable cause of action has been presented.

The plaintiff Moore contends that due to population disparities in the various districts in which representatives in Congress are nominated as provided by the "9-8 plan", his vote is diluted and does not carry as much weight or count as much as the vote of other electors in other districts within the State of Alabama.[2] It has been clearly established by the foregoing decisions and numerous others that the vote of one qualified elector in one area of the state should be given the same weight as other qualified electors in other areas of the state; and that in debasing the weight of an elector's vote, the state has abridged the right to vote for members of Congress as guaranteed by the U. S. Constitution. State legislation which "contracts the value of

---

1. For a summary of the provisions of the "9-8 plan" and the text of the act in question, see the cited cases and Secs. 426(1)–426(5), Title 17, Code of Ala., 1940.

2. For example, the total population of the 1st District in which the plaintiff resides is 441,440; whereas, the total population in the 7th District is 236,216. The greatest disparity exists between the 7th District and the 9th District (Jefferson County), in which latter district there are 634,864 inhabitants.

some votes and expands that of others" is said to violate Article 1, Sec. 2 of the U. S. Constitution which commands that representatives be chosen "by the People of the several States"; and, as stated in Wesberry v. Sanders, "as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's". The conclusion is grounded on Article 1, Sec. 2 of the Constitution, and the court expressly stated that it did not reach the contentions that the legislation under consideration violated the due process, equal protection, and privileges and immunity clauses of the 14th Amendment.[3] The two Alabama decisions and the decision of this court, supra, held that the "9–8 plan" did not violate the 14th Amendment to the U. S. Constitution, or appropriate provisions of the Constitution of the State of Alabama. However, in view of the recent pronouncements of the Supreme Court of the United States, we reach the clear conclusion that the so-called "9–8 plan" is unconstitutional, in that it violates Article 1, Sec. 2, of the United States Constitution, Wesberry v. Sanders, and the equal protection clause of the Fourteenth Amendment, Martin v. Bush, supra.

■■ Even so, in dealing with serious constitutional questions, the principles of "all deliberate speed", "local problems", and "the operation of election machinery", are matters which should be given serious consideration by this court in providing remedies for the abridgment of constitutional rights. Such principles have been applied before where serious constitutional questions were presented. The election machinery of Alabama is presently in operation with respect to the election of congressional representatives. See Title 17, Sections 344, 346, 348 and 426(1)–426 (5), Alabama Code of 1940, as amended. Under our traditional concepts of jurisprudence and the appropriate function of the judicial and legislative branches of government, both state and federal, the decisions demonstrate a feeling of restraint and a reluctance on the part of the judiciary to fashion specific remedies which should be fashioned by the legislative branch of government. Failure of the legislative branch to act imposes a burden on the judiciary to provide a remedy that meets the requirements of the United States Constitution. In Wesberry v. Sanders, there was a clear finding of unconstitutionality, but the Supreme Court in effect agreed with the dissenting opinion in the lower court denying injunctive relief, in spite of the great disparity there shown, "in order to give the Georgia Legislature ample opportunity to correct the 'abuses' in the apportionment".[4] The Supreme Court concluded:

> "The question of what relief should be given we leave for further consideration and decision by the District Court in light of existing circumstances."

In Martin v. Bush, the Texas case, the Supreme Court concluded:

> "The motion to affirm is granted and the judgment is affirmed on the authority of Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526 [11 L.Ed. 2d 481], without prejudice to the right of the appellants to apply by April 1, 1964, to the District Court for further equitable relief in light of the present circumstances including the imminence of the forthcoming election and 'the operation of the election machinery of Texas' noted by the district court in its opinion. The stay heretofore granted by Mr. Justice Black is continued in effect pending timely application for the foregoing relief and final disposition thereof by the District Court." [5]

---

3. See note 10 of the majority opinion in Wesberry v. Sanders.

4. See dissenting opinion in Wesberry v. Vandiver, D.C.. 206 F.Supp. 276, 286.

5. For other cases following essentially the same principle in varying circumstances see: Sanders v. Gray, (D.C.Georgia), 203 F.Supp. 158; Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821, 825 ;.

■■ It is entirely valid and legal to choose congressional representatives as a group on a statewide basis; and nothing said herein should be construed as a prohibition upon the Legislature of the State of Alabama to enact such legislation as it may deem appropriate to provide for the present election of representatives in Congress on a state-wide basis; nor should this opinion be construed as an intimation that the State Democratic Executive Committee cannot or should not now provide for elections in any legal manner it chooses under the constitutional principles as herein declared. In this connection, it seems appropriate to observe that the law contemplates the establishment of congressional districts avoiding serious population disparities in the various districts, and balancing such districts as to population with as much mathematical precision as practicable.

## INTERLOCUTORY ORDER

In accordance with the foregoing opinion and after giving due consideration to the pleadings, the stipulations made, the evidence submitted, and the argument of counsel, it is the order, judgment and decree of this Court:

1. That this statutory Three Judge Court has been duly constituted, has jurisdiction of the parties and subject matter of the cause, and has the power and authority to adjudicate the controversy presented and to grant such relief as may be appropriate. All motions and petitions not heretofore disposed of are hereby denied.

■ 2. That the use of Section 426(1)–426(5), Title 17, Code of Alabama of 1940, as amended, as a means for the nomination and election of representatives in Congress of the United States, is hereby enjoined and restrained, from and after its possible use during the elections to be held for the nomination and election of representatives in Congress, during the year 1964; the use of said plan for the nomination and election of representatives in Congress of the United States during the year 1964 is not herein enjoined.

3. That jurisdiction of this court is hereby expressly reserved for such action as it may deem appropriate in the future; and this court expressly reserves jurisdiction to provide appropriate remedies on its own motion if the legislative branch of the government of the State of Alabama fails to take action within a reasonable time after the commencement of the first session of such Legislature which may convene hereafter. In any event, unless appropriate legislation is adopted prior to the time for the nomination and election of representatives in Congress, after the year 1964, this court will provide such remedies as it may consider appropriate to meet the requirements of the United States Constitution.

4. That no costs are taxed at this time.

Toombs v. Fortsman (D.C.Georgia), 205 F.Supp. 248; Wesberry v. Vandiver, 206 F.Supp. 276; Sobel v. Adams (D.C.Fla.), 208 F.Supp. 316; Sims v. Frink (D.C. Ala.), 208 F.Supp. 431; Swann v. Adams (D.C.Fla.), 214 F.Supp. 811; f. n. 5 Wesberry v. Sanders; and the concurring opinion of Mr. Justice Clark in Wesberry v. Sanders, wherein he stated:

"If on remand the trial court is of the opinion that there is likelihood of the General Assembly reapportioning the State in an appropriate manner, I believe that coercive relief should be deferred until after the General Assembly has had such an opportunity."